Four cases on the calendar this morning. Two patent cases, one from the Patent Office and one from a district court. Two government employee cases, the latter of which is being submitted in the briefs and will not be argued. First case is In Re POD-NERS, 2008, 1492. That's an important year, Mr. Cleveland. My name is Dan Cleveland, arguing on behalf of POD-NERS in this appeal. POD-NERS is a company that sells seed stock to farmers to grow out things such as field beans. In this instance, POD-NERS improved a line of beans that in Spanish means yellow green. We have a unique seed coat color. Even as a Parolano. Yes, indeed. We are here appealing the outcome of the result on re-examination and re-issue. The board has rejected all the claims in the patented issue. The rejections fall into two categories. One is section 112 rejections. The others are rejections following the area of prior art rejections of 102-103. The 112 rejections can all be grouped that the single fault there is a failure to consider the evidence of record that forms the basis of the rejection from the perspective of ordinary skill. When you say the failure to consider, you really mean the failure to discuss. The fact that they haven't said something doesn't mean they didn't consider it necessarily. They did. They said that the evidence that we provided in the re-examination contradicted the evidence that we provided in the patent specification when it went on file. They did consider it and they did articulate it. They're holding us to a standard of molecular cloning when this is a breeder grower selection art. Breeder growers select from a genetically diverse population. They select on the basis of observed phenotype. There is a presumption that a genetic basis underlies the observed phenotype. In fact, it stably reproduces as a selected trait so that it must be true that there is a genetic relationship to observed phenotype. What is the essence of your invention? It's the color of the bean? The essence of the invention, the most distinctive trait of the variety Enola is the seed coat color which is unique. The color? Yes, your honor. That's the one seed that you disclose in this patent and you have broader claims. Why isn't the rejection of the broader claims for lack of written description and enablement correct? For example, claims 59 to 64, broader claims, aren't they? They are broader claims where the claims would read on a population of seeds, some of which the seeds do not have the claimed seed coat color. That is correct. That is true of the seeds on deposit. There is a very small amount of noise in the seeds. Therefore, why isn't the rejection sound? The specification aided by the deposit fails to describe and enable seeds having the breadth of the claims. The claim is representative of the seeds on deposit and any variety that exists on deposit. It's broader than the seed on deposit, isn't it? No, sir. The seeds on deposit do have this small amount of noise. What do you mean by noise? Variances from the observed trait upon which Enola was... Variations? Yes, your honor. But if that's the case, then you run into, do you not, a written description and even an indefiniteness problem. Because your description doesn't allow, you have the deposit and now you're saying the deposit isn't really what's described. It's broader than what's actually described in the specification. No? Not from the perspective of ordinary skill in the art. All varieties on deposit, all varieties have this small amount of difference. We submitted in prosecution an article called qualitative genetics to show that this exists in all varieties and it can even be mathematically predicted. From the perspective of skill in the, ordinary skill in the art, there is always this small amount of noise or drift in non-clonal organisms. This is what forms the basis for people to further select. The selection processes have been going on for millennia and this small amount of noise is what forms the basis of people to further select and further improve these varieties. Did your inventors invent what's claimed? Didn't they just buy seed in Mexico and replant it? So what did they invent? They did buy seed in Mexico. They selected from the seed that they purchased. They bred it out through a number of generations and further... Regeneration, is that right? I believe that is correct, yes. And selecting the entire time for an interesting color code characteristic. Why wouldn't it have been obvious to someone of ordinary skill in the art who wanted to develop the best possible yellow bean to do exactly what Mr. Proctor did? The genetics of bean seed coat color are very, very complex. There is an article at issue in this prosecution by a man named Bassett. He concludes that the genetic combinations that produce the seed coat color are episodic, meaning that the gene characteristics interact with one another. You can't predict them. He provided a new genetic trait. He is a member of the genetics committee, the Bean Improvement Cooperative. These are the people that monitor the genetics of bean varieties and how you can control color and expression and different traits of the plants. He concluded in his paper that these traits are episodic and the full resolution of the Enola seed coat color was beyond the scope of his scholarly article. What he did, I gather what he did is, first of all, he bought these beans and they had different colors, including some yellow beans. Well, if he wanted to produce a new strain of yellow bean or with a slightly different color, it seems to me obviously the first thing he would do is pick the yellow beans or pick some of them out of the package that he bought and then, as I understand, he planted it for three generations and combined them. Why isn't that what normally anyone would do who wanted to try to improve the bean and isn't that obvious to one of ordinary skill in the art? It is not obvious because serendipitously he happened upon a new genetic trait. What is the new genetic trait? The new genetic trait, if you call it GY or SGY as described by Bassett, he is actually following the work of Enola to explore the genetics that we stumbled upon here. And does the claim set that forth? No, this work followed Enola. This was done after Enola. Certain claims do set forth expressly the seed coat color at issue as scored under the Munsell Book of Color. We've had a little trouble with the clock here, but I think we've got a pretty good idea that you've taken nine minutes and, of course, you have six minutes left. I have five minutes for rebuttal. Yeah, all right. Then you're close to that. Do you want to continue or save it? I would just prefer to save it. Ms. Kelly. Thank you. Good morning, your honors. May it please the court. Each of the 112 rejections in this case was made in response to broadening amendments that partners chose to make during to support those broadening amendments that really call into doubt the written description provided in their specification as well as the integrity of their deposits. To be clear, and I guess maybe there's a distinction between one through seven and then the remainder, let's leave aside 59 through 64 for now. Is your position that it feels under written description? I mean, we've got a deposit which shows possession, and then we've got a one. Why doesn't that on its face satisfy the 112 written description requirement, at least with respect to claims one through 59? Had not PODR submitted this evidence that contradicts what's in the specification, that probably would be acceptable. The USPTO finds itself in this unique position where the patentee has come back now and said to us, hey, the description we provide in our specification isn't right. It's what we really have on deposit is broader and different than what we told you we have in the specification. For example, if you look at the 079 patent, it expressly says, and this is the record at page 7, column 4, line 36, no variant traits have been observed or are expected in ENOLA. The patent repeatedly teaches that this is a stable and uniform being having this defined yellow color, yet PODR submitted evidence and made arguments. You could see in the report- So why is that a written description? I mean, why isn't that more of an indefiniteness issue where you're saying, bottom line is given these new submissions, nobody could figure out what on earth this guy has claimed? Why is that a failure of a written description? Well, Your Honor, the USPTO, again, this is a case of first impression. This is a- First impression how? Why? It's a case of first impression. We haven't ever had, to our knowledge, anyone come back to us and say, what we told you our deposit was in the first place to get our patent is different than what we're telling you now to get broadening claims. Isn't that indefiniteness then, as Judge Post suggests? We believe it is indefiniteness. We believe that there's also a written description problem because the description in your specification, in order to satisfy the quid pro quo, must be accurate. And we believe that this court's decision in ENSO supports those statements that, referring to that language, that in order to same language, and I hate to, I'm hesitant to read back Judge Lori's own words, but it says such a description- That never hurts to repeat good language. Such a description is the quid pro quo of the patent system. The public must receive meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time. Ms. Kelly, I want to ask you about prior art rejection. Sure. Claims are rejected based on the disclosure of Azufrado in light of Palatini. Palatini, of course, is dated after the effective filing date. Where is the disclosure of Azufrado? What is the timeline? The Azufrado disclosure is in Salinas. But you don't, the board didn't apply Salinas. There's a footnote. The only mention of Salinas is in footnote 17. And there's no description of what Salinas describes. I looked long and hard, and the only disclosure of Azufrado that I could find was that footnote. So you're telling me that that is the disclosure? No, Your Honor. If you look to the board's run through a list of phenotypic traits. I'm comparing Azufrado Paraguay with comparing Azufrado Paraguay 87 with the claim beans. And if you look to- Yes, but Azufrado, where is that prior art? I mean, you just, it was prior art in Mexico. That's not effective prior art under the US statute. Under the US statute, the Salinas publication, which for reasons I cannot explain, the even number of pages of it appear at the end of this, at the end of the joint appendix. And then there's a supplemental appendix where the odd number of pages of that appear. And that is a description of Azufrado Paraguay. And it is also, it contains a list of all the morphological characteristics for Azufrado Paraguay that you find in the appendix in the board's decision on page 40. Where's the date? Is there a date on associated with Salinas? Sorry. I know that we referenced the exact date. Let me... Can we assume it's before 99 or before? It's October 1996. It's hard to see on this particular page. Let me get to the translation. At the board, you just referred to page 40, which is a list of the traits of Azufrado Paraguay. And it says, Azufrado Paraguay, 87, is disclosed as having the following primary traits. Disclosed where? Once again, the board's opinion doesn't really go into Salinas. If you look to your appendix at page 1862, there's a translation of Salinas. And you will see exactly where the board gets those characteristics, which are listed on the appendix at page 40. Pretty casual board opinion, don't you think? I respectfully disagree. They list all the traits that are listed here in translation. Well, the other confusion is going back to 29 of the board's opinion, when they refer to Azufrado, they say, in light of the documents filed in 2004 and in light of Palatini. Whatever. What they're saying is, in Salinas, we have a disclosure of something that phenotypically looks like this bean. And then in addition, on top of that, we have a later publication saying inherently, it's telling you that these beans are greater than 96% identical. But this disclosure followed the issuance of the patent. Well, even setting Palatini aside, you still have the disclosure within Salinas. Yeah, the problem is that the board didn't seem to really set Palatini aside. It cites Salinas and then concludes, in light of the documents filed in 2004 and in light of Palatini. But I would submit that that is not reversible error, because if you look to the board's decision at page 40, you have a recitation of every single one of the phenotypic traits that are listed by Salinas in the translation that your honors have at page, again, 1862. In other words, it's not reversible error. That suggests you concede it's error? No, I don't concede that it's error. But obviously, Judge... Well, I inferred that Judge Post might believe that it's error. This was not erroneous. You said this was not reversible error, which to me would suggest that it's probably error, but it's not a ground for reversal. I would like to better describe my thought process. My thought process was, even if you were to believe that it was error to also cite Palatini, even if this court were to have that I do not believe it was error, because you had the board expressly went through all of the things listed in Salinas as to the similar morphological characteristics between Osiphrata periwano and the disclosed Enola beans. They found substantial identity there. Then some confirmatory evidence came in and said, look, there's also this genetic similarity greater than 96% genetic similarity. And this bolsters the disclosure that is found in Salinas. You're reversing your use of the word reversible error. You're withdrawing the word reversible, in effect. Let me ask you about claims one to seven. Those are pretty specific, but you defend the rejection on the grounds of this admission, later admission, and prosecution that the claim that the material disclosed is more variable than was originally disclosed. Well, um... Claims one to seven are pretty much limited to the deposit, aren't they? Well, not really. Why doesn't the deposit suffice? If you look to that language, they don't just say a Fasciolis vulgaris, a common field bean, of ATCC deposit, et cetera, et cetera. If you look to the language of claim one, it actually says a Fasciolis vulgaris field bean seed designated Enola. And those words are important. Enola is the designation of the inventor to describe this bean. And if you look to the specification in the 079 patent, if you look to that specification, they say that Enola is a yellow seeded cultivar having a unique yellow color. So by using this word Enola, which is a word that the inventors coined to describe these yellow beans, they have now, in the PTO's construction, imported their description of what makes Enola different from all the other Fasciolis vulgaris beans. But I do understand your concerns with respect to claims one through seven. And we believe that the crux of that, the crux of the difference there is that they chose to insert those words of Enola, designated Enola. If one of those claims that had been deposited- Pardon? It's a gray bean. I take it, claim one would cover it, wouldn't it? I'm not sure a gray green, but- A bean that isn't yellow. Claim one of seven make no mention of the colors, would they? We believe that by using the word that's a word specific to the inventors- Unlike claim eight, which specifically refers to a yellow bean with various positions of the color chart, as I can see claims one to seven, at least if you printed in the back of the cover of your brief, makes no reference to any color of a bean. All it refers to is beans that have been deposited. Your Honor, again, under the board's construction, the use of the word designated Enola imports into that, this is the inventor's word, to how to describe these beans. Yeah, but I come back to my question, which is, let me make it a little more exacting. There's no explicit reference to color in claims one to seven. That you'll agree, won't you? I agree there is no explicit- But you say by implication, the reference to Enola is enough to cover. Correct, Your Honor. And we will agree with Your Honors that had they not said designated Enola, claims one through seven might not face this written description issue. There would, however, be an issue with respect to enablement. And were all the beans deposited designated Enola? I don't have the deposit receipt in front of me, however, the specification, if you look to example two of the specification, it says that the seeds, the beans that were described in example one, were deposited with the ATCC. And example one- But it doesn't say that some other beans weren't also deposited. Pardon? It doesn't say that some other beans weren't also deposited. It does not say that some other beans were deposited. It's very hard to prove a negative, but if we look to the specification, the exact words that it uses are that it said seeds of Enola have been deposited with ATCC, I'll leave out all the addresses, and received accession number ATCC 209549. Although that doesn't say, oh and by the way, that includes other beans. A deposit is supposed to be uniform so that those in the public, once the patent expires, can go back and get those seeds and make and use the invention. And if it's not, that doesn't satisfy the quid pro quo. The public is harmed in this way because now an inventor has the right to exclude people for well over a decade from making and using this invention, and now the public can't make and use it once the patent has expired because they can't get those beans. But if you look to the reply brief, if you look to the reply brief, they said the amount of variation is 79% to 87% of those beans fall within this color range. The rest of them may not. So we're talking about 21% to 13% variance. What they argued before the board was 80% to 85% of those beans are the correct color, and then there's another 10% to 15% that aren't. The board felt that that was just too much variance to satisfy the quid pro quo. And all that Ponderous has offered is to say, this is a breed of grower art, and some variance is acceptable and allowed in such an art. But... Ms. Kelly, your light is on. You want to finish up your thought? Okay. They haven't presented any evidence about what is and is not an acceptable level of variation in the art. And I do understand your honor's concern about... We're not asking for 100%. We're just stating that it seems that you only have a 79% chance of getting the bean that you want if you go to this deposit. Really seems like not enough to satisfy the quid pro quo. Thank you very much, Ms. Kelly. Mr. Cleveland has some rebuttal time. I would like to first address the issue of diversity of the deposit. Essentially, the patent office is arguing that the deposit for Enola is too diverse to constitute a representative sampling of a variety, a stably producing cultivar. And it's simply untrue, your honor. If, from a perspective of ordinary skill, because all of the pure beans that we scored, all the other varieties of Mayakova, Parijuana, we scored them. It's on page 27 of our reply brief. And Enola demonstrates a much higher level of stringency than the pure beans do. So it is unique in that it is more stable than its other pure varieties. So from a perspective of ordinary skill in the art, we've scored it, we've proved it. It is simply untrue that we have too much drift to constitute a variety or an acceptable deposit. All deposits have this kind of noise. If I'm growing a Nazafredo 87 bean and I happen to get one that makes beans with seed coats that come within your color, your claimed range on the Yes. Because? Because it's in the color range of, say, claim 13. As I understand the question, claim 13 is directed to a single seed within that color range. So even if it's prior art, it comes within the prior art. You say we still infringe? Oh, no. If it's in the prior art, it does not infringe. I'm growing a Nazafredo bean. Do you agree that that was in the prior art? Yes. There are Nazafredo beans in the prior art. Why don't you lose on prior art because of footnote 17, Salinas? Here I'm able to shed some light on the prior discussion. Salinas is an article describing a bean that is in the prior art, Nazafredo Caruana 87. It's a variety from 1987 that's in the prior art. Salinas does not score the color range. Salinas admits there are differences. What do you mean score? The Munsell Book of Color is an industry standard. It appears as paint swatches and you put a bean on a color. It's an organized hierarchy of how you do this. It's actually more complex than that. Palatini, because Salinas had these problems, didn't score the bean, they admit there's differences. Because of the admitted differences in Salinas, I submit also that the Patent Office never fulfilled its requirement to show substantial identity before shifting the burden onto potters. We have been unfairly imposed that. There's also an obviousness rejection, not just lack of novelty. This is true. Substantial identity isn't necessary. It is to shift the burden, as they did under N. Ray Best and these cases. Because they didn't have the color, they put the burden on us to show the color. We scored every bean that the repositories would give us that we could get that they had identified. You're saying there isn't even a prima facie case under Salinas. Exactly. There is no prima facie case under Salinas because there's no showing of substantial identity. The shifting of the burden was improper to begin with. However, I would like to proceed to show that Palatini was used to, they tried to use the after the fact Palatini reference. Palatini is not itself prior art. And addressing your question, Judge Prosser. But if that's after the fact, if it is construing a reference that is prior art, why isn't that valid? That's exactly how it was applied, Your Honor. This is my point. And Palatini was co-authored by Gebbs. We have an expert report from Dr. Paul Gebbs giving us the underlying data from Palatini. Both Palatini and the expert report of Paul Gebbs all cite the Bassett article. Bassett is the only one who ever actually scored the color of these beans. Bassett found that the Enola beans that he studied had two peaks of color, SGY and PGY. It's untrue. That's not borne out in the data that we have in the Weibel Declaration charts 15 and 31. But this is what Bassett concluded. He scored, he reports having scored PGY and SGY. He says that they are the same, he says Enola scored the same in the PGY category. He admits it's different in SGY. He says Enola scored the same as Mayakoba and Azufrado as a class. He says these colors are all the same. Palatini relies on Bassett for that. Gebbs relies on Bassett for that. We scored those beans. We presented it on page 27 of our reply brief in a table that presents it for you in a very summarized way. The scores are simply different. There is no substantial evidence in the prior art showing that these prior Azufrado beans have the claimed color range. What about all the properties listed on page 40 of the board's opinion? There are admitted differences in those properties. There's a determinant versus semi-determinant growth habit. There's mold resistance, number of seeds per pod. There are admitted differences there. That is why there's no showing of substantial identity in the first place. Thank you, Mr. Cleveland. Take the case under authorization.